## Armstrong *v.* Bufford.

*Action on Promissory Note, and for Price of Goods sold.*

1. *Contract for sale of fertilizers without inspection.* — The act approved March 8th, 1871, requiring the inspection of all fertilizers offered for sale, by inspectors appointed for that purpose, and punishing as a misdemeanor the sale of any fertilizer which had not been inspected (Sess. Acts 1870–71, p. 68), was not intended to suspend the sale of fertilizers until the appointment and qualification of the inspectors; and since penal statutes do not take effect for thirty days after the adjournment of the legislature by which they are adopted (Rev. Code, § 3544), a sale of fertilizers which had not been inspected, made within thirty days after the passage of that statute, is not void as against public policy.

2. *Merchantable quality of goods sold.* — In respect to the merchantable quality of goods sold, where the purchaser has an opportunity of inspecting them, the rule of law seems to be, that the seller may let the buyer cheat himself *ad libitum*, but must not actively assist him in doing so; in the absence of a warranty, the purchaser buys on his own responsibility.

APPEAL from the Circuit Court of Macon.

Tried before the Hon. L. B. STRANGE.

This action was brought by Henry H. Armstrong against James J. Bufford, to recover the agreed price of a certain quantity of guano, described as "Soluble Pacific Guano," sold by plaintiff to defendant on the 5th day of April, 1871. The complaint contained a count on a promissory note for one hundred dollars, which purported to be given for the price of the guano, and the common count for goods sold and delivered. The record does not show what pleas were filed, but the defences seem to have been : 1st, that the guano was not of merchantable quality, but was worthless as a fertilizer ; and, 2d, that the contract was contrary to public policy, and void, because the guano was not inspected and stamped, prior to the sale, as required by the provisions of the act approved March 8th, 1871, entitled "An act to protect the planters of this State from imposition in the sale of fertilizers." This act, which may be found in the Session Acts of 1870–71, pp. 68–9, contains four sections, the first of which provides for the appointment of an inspector by the governor, and requires him to give bond, &c. ; while the second section provides for the appointment of sub-inspectors, and prescribes their duties; the fourth fixes the compensation of the inspectors, and the third is in these words : "*Be it further enacted,* That any person who shall sell, or offer

VOL. LI.

for sale, within this State, any fertilizer manufactured or imported into this State, which has not been inspected, stamped, and certified to, as required by the preceding section of this act; or any person who shall knowingly use an inspector's certificate, to induce or influence the sale of any fertilizer of different composition from that for which it was originally given by the inspector or sub-inspector, or who shall use an inspector's brand or stamp a second time, with intent to defraud, or to evade the provisions of this act; or any inspector, or sub-inspector, who shall issue a false certificate, or affix a false brand or stamp, shall be guilty of a misdemeanor, and, on conviction thereof in any court having jurisdiction, shall be fined not more than one thousand dollars." As to the construction and effect of this statute, the court charged the jury as follows: "After the approval of the act approved March 8th, 1871, the sale of all fertilizers imported into this State was suspended until the requirements of the said statute were complied with, and a sale without a strict compliance with its terms was void; and if the jury believe that the plaintiff in this case sold guano to the defendant after the passage of this statute, and before the inspection provided for in said act, then the plaintiff could not recover." To this charge the plaintiff excepted, and requested the court to instruct the jury: " That the said act of March 8th, 1871, is a penal statute, and did not go into effect until thirty days after the adjournment of the legislature by which it was passed; and that if they believed, from the evidence, that the note sued on was made by the defendant on the 5th April, 1871, then the contract evidenced by said note is not against public policy, but is a valid contract between the parties, on which this action can be maintained." The court refused this charge, and the plaintiff excepted to its refusal.

As to the quality and value of the guano, there was conflicting evidence, the defendant's testimony tending to show that it was utterly worthless as a fertilizer; and several exceptions were reserved by the plaintiff to the rulings of the court as to the admissibility of evidence on this point. " There was no proof of any warranty by the plaintiff, or any representations whatever as to the quality of the guano, or that he knew anything about its qualities. On this branch of the case, the court charged the jury as follows: " In this State, the seller of personal chattels, which require in their composition some special art or skill, impliedly stipulates that the article sold is sound and good; and if the plaintiff sold to the defendant guano, which proved to be a spurious article, and not genuine, and not of any value, then the plaintiff was not entitled to recover, although there was no warranty, or fraudulent representation or concealment on the part of the seller." The plaintiff excepted

[Armstrong v. Bufford.]

to this charge, and requested the court to instruct the jury: 1st, " that in the sale of personal property, the buyer takes it at his own risk as to quality, and the title only is warranted ; " 2d, " that the buyer cannot defend against the purchase-money of personal property, by showing that the property was of no value, when the seller made no warranty, and practised no fraud ; " 3d, " that to entitle the purchaser to recover for any defect in the quality or soundness of the article or property sold, he must prove that the seller warranted the thing sold to be good and sound, or that he concealed or fraudulently represented its qualities." The court refused each of these charges, and the plaintiff excepted to their refusal.

The charges given by the court, the refusal of the several charges asked by the plaintiff, and the adverse rulings on questions of evidence, which require no particular notice, are now assigned as error.

BLAKEY & FERGUSON, for appellant. — 1. The act of March 8th, 1871, being a penal statute, did not go into effect until thirty days after the adjournment of the legislature by which it was adopted. Rev. Code, § 3544. This statute not being of force when the contract here sued on was made, the contract cannot be held obnoxious to the public policy declared by it.

2. In the absence of a warranty by the seller, or false representations as to the quality of the article sold, the purchaser buys at his own risk, and cannot resist the payment of the purchase-money because the article was of inferior quality. *Ricks* v. *Dillahunty*, 8 Porter, 134 ; *Barnett* v. *Stanton & Pollard*, 2 Ala. 181.

GRAHAM & ABERCROMBIE, *contra.* — 1. A contract, founded on an act prohibited by statute, or contrary to public policy as declared by constitutional or statutory provisions, is void, and cannot be enforced. *Stanley* v. *Elliott*, 28 Ala. 514 ; *Milton* v. *Haden*, 32 Ala. 30 ; *Gunter* v. *Lecky*, 30 Ala. 591 ; *Dodson* v. *Harris*, 10 Ala. 566 ; *Shippey* v. *Eastwood*, 9 Ala. 198 ; *McGehee* v. *Lindsay*, 6 Ala. 16. The legislative policy in reference to the sale of fertilizers is clearly indicated by the act providing for their inspection ; and although a party could not be prosecuted criminally until thirty days after the adjournment of the legislature, yet a contract contrary to its policy, entered into in the mean time, would be clearly void. The act was operative, for some purposes, from the time of its passage ; otherwise, the appointment of the inspectors would be void.

2. The evidence showing a failure of consideration was prop-

[Armstrong v. Bufford.]

erly received. *Holt* v. *Robinson*, 21 Ala. 106; *Corbin* v. *Sistrunk*, 19 Ala. 203.

B. F. SAFFOLD, J. — It was not the intention of the legislature, in making it a penal offence to sell, or offer for sale, within this State, any fertilizer not inspected, stamped, and certified to, as required by the statute, to suspend the sale of such article until the inspectors were duly appointed and qualified. Where a statute affects a community, and requires, as a condition to its validity, that something should be done before it goes into operation, the act has no force or effect until the thing required to be done is performed. In this case, the inspectors were to be appointed, and the chief one was to give bond. Time was necessary for this; and in the mean while, the business of the people was not to stand still. *Savage & Darrington* v. *Walshe & Emanuel*, 26 Ala. 619, 629.

By section 3544 of the Revised Code, penal acts do not go into effect until thirty days after the adjournment of the legislature at which such act is passed. The contract, supposed to be vitiated, on the ground of public policy, by the act " To protect the planters of this State from imposition in the sale of fertilizers," approved March 8, 1871 (Acts 1870–71, p. 68), was entered into on the 5th of April, 1871, within the thirty days. Until the sale of the fertilizers without inspection became an offence, it cannot be said to be in contravention of public policy. The authority which prescribed the policy directed when it should begin. The charge of the court on this point was erroneous.

2. The rule in respect to the merchantable quality of goods sold, where the buyer has an opportunity of inspecting them, seems to be, that " the seller may let the buyer cheat himself *ad libitum*, but must not actively assist him in cheating himself." 1 Parsons on Contracts, m. p. 535; *Barnett* v. *Stanton & Pollard*, 2 Ala. 181; *Ricks* v. *Dillahunty*, 8 Port. 133. I think the rule of the civil law is preferable, that a dealer impliedly warrants the merchantable quality of his goods. But our law says the purchaser must buy on his own responsibility, or ask for a warranty.

The judgment is reversed, and the cause remanded.