266 So.2d 887

**AMERICAN LIBERTY INSURANCE COM-
PANY, a corporation**

v.

**Leroy E. PACK and Ruth E. Pack.**

**6 Div. 119.**

Court of Civil Appeals of Alabama.

May 24, 1972.

Rehearing Denied July 12, 1972.

Sadler, Sadler, Sullivan & Sharp, Bir-
mingham, for appellant.

631

A. Vincent Brown, Bessemer, for appellees.

BRADLEY, Judge.

On September 3, 1968 Leroy Pack and his wife, Ruth (hereinafter referred to as appellees) filed a one count complaint in the Bessemer Division of the Jefferson County Circuit Court, claiming $6,000 from American Liberty Insurance Company (hereinafter referred to as appellant) allegedly due under a fire insurance policy issued by appellant on appellee's house for the total destruction of said house by fire and for which notice was given to appellant. The demurrer filed to the complaint was overruled, then a plea in short by consent, etc. was filed, whereupon a trial was had before the court sitting without a jury. Judgment was entered for appellees and an appeal therefrom was taken to this court. On review this court reversed and remanded for new trial. American Liberty Ins. Co. v. Pack, 46 Ala.App. 597, 246 So.2d 664.

The case was retried on June 24, 1971. Again, the trial court, sitting without a jury, found for the appellees and awarded them $6,000.00 plus $1,092.80 as interest. In said judgment is found the following special finding:

" . . . that the notice of cancellation given by one of the insured, Leroy E. Pack, to the General Agent of the Defendant was not unequivocal, but there was a binding agreement entered into between said insured and the General Agent of the Defendant that the said policy in question would be cancelled at the time that policy was delivered to the General Agent or the insured signed a receipt to the effect that the policy had been lost, and the court finds that neither of such conditions was ever carried out."

From said judgment the present appeal was taken to this court.

The facts appear to be as follows:

In 1966 appellees purchased some property from Mrs. Nell Griffin. On the property was a house, into which appellees moved and shortly thereafter commenced

certain improvements thereto. The cost of the improvements amounted to around $11,000.

Mrs. Griffin had the house in question insured for $6,000.00 with appellant through its general agent, Paden Realty Company. Subsequent to the sale to appellees, Mrs. Griffin endorsed the insurance policy to the appellees. The policy period ran from March 29, 1965 to March 29, 1968.

The evidence reveals that a premium in the amount of $39.00 was paid to appellant by the Paden Agency on behalf of appellees for the last year of the policy.

In July or August 1967 Leroy Pack directed Mr. Ed Porter of the Paden Agency to cancel the policy in question. Mr. Porter said, okay, but you will have to bring the policy in or sign a lost policy receipt before we can cancel the policy. Mr. Pack replied, okay, I will bring the policy in as soon as I have time.

The house owned by the appellees and insured by appellant was destroyed by fire on November 13, 1967.

The evidence is undisputed that Leroy Pack never did surrender the policy in question to the Paden Agency or the appellant, nor did he sign a lost policy receipt.

It was also shown that appellees had paid the Paden Agency all moneys due to it for premiums paid by it on insurance policies held by appellees.

Appellees filed a claim with appellant through the Paden Agency for the loss and said claim was denied.

There are six assignments of error, all claiming that the judgment of the trial court is wrong in one way or another, but all hinged or connected to the contention that the appellee, Leroy Pack, had cancelled the policy in question prior to the fire which destroyed his house. The question of whether or not the policy was cancelled prior to the loss is decisive of this appeal.

The cancellation provision of the policy in question reads as follows:

"This policy shall be cancelled at any time at the request of the insured, in which case this company shall, upon demand and surrender of this policy, refund the excess of paid premium above the customary short rates for the expired term."

We decided the first appeal of this case by finding that appellee, Leroy Pack, had cancelled the policy in question prior to his loss and relied mainly on two cases, which held, in essence, that where the terms of the policy relating to cancellation have been complied with by the insured, the policy is cancelled. See Society of Roman Catholic Church of the Diocese of Lafayette v. Northwestern Mutual Ins. Co., La. App., 204 So.2d 116; and Murphree v. National Life & Accident Insurance Co., 168 Miss. 667, 150 So. 534.

We also concluded that the evidence in the first case was insufficient to prove an agreement to alter or change the cancellation provision of said policy, which was one of the two ways, according to *Murphree,* supra, that an insurance policy could be cancelled. i. e., a policy may be cancelled according to the terms set out in the policy or by the terms of a subsequent oral or written agreement.

In the present case the facts, in one important respect, are different from the facts in the previous case.

The facts in the present case show that when appellee, Leroy Pack requested Mr. Porter to cancel his policy with appellant, he was told by Mr. Porter that he could only cancel the policy by bringing it in to him or the office or by signing a lost policy receipt, to which statement Mr. Pack replied: O. K., I'll bring it in when I get time.

We believe that the evidence is sufficient to support the trial court's finding that the parties to this dialogue, i. e., Mr. Pack, the insured, and Mr. Porter, the general agent for appellant with authority to

enter into contracts of insurance on behalf of appellant and also to cancel policies of insurance on behalf of appellant, mutually assented to a different cancellation procedure for the policy in question, which was a cancellation upon surrender of the policy or the signing by insured of a lost policy receipt.

The court in *Murphree,* supra, in discussing the two methods of cancellation of an insurance policy said:

". . . If under the terms of the policy, then those terms must be adhered to as written in every material particular, and shall not be changed by either party in any obligatory way in the surrender or cancellation—this for the obvious reason that, if the obligatory features of those terms be abridged or enlarged or changed in any material way, then the surrender is not under those terms, but under something subsequent to and different from them. If by a subsequent oral or written agreement, then every part of the said subsequent agreement shall have operation as to every material feature that it covers or includes, and, if the agreement is brought about by means of a proposal on one side and acceptance on the other, the acceptance must be in the exact, or substantially exact, terms of the proposal, and the acceptance must be communicated to the proposing party."

See also Dixie Auto Ins. Co. v. Steele et al., 262 So.2d 283, Supreme Court of Alabama, May 11, 1972.

In the case at bar the cancellation provision as set out in the policy was altered and changed by the insurer through its general agent, the Paden Agency, when it would not permit the insured Pack to cancel according to its terms, and created a new cancellation procedure when it informed the insured that the policy could only be cancelled by surrendering it or signing a lost policy receipt.

The new cancellation procedure was proposed and said proposal was communicated to the insured Pack orally and was by the insured accepted in the terms proposed to him, for he agreed to the new cancellation procedure when he informed appellant's agent that he, in effect, accepted the cancellation procedure insisted upon by insurer's agent and would bring in the policy for cancellation when he had time to do so.

The evidence is undisputed that the insured never did surrender the policy to the agent nor did he sign a lost policy receipt; hence there was no compliance by the insured with the new and different cancellation procedure agreed to and adopted by the parties to the contract of insurance.

We therefore conclude that the policy of insurance in question here was not cancelled by the insured and it was in full force and effect on the date the insureds suffered their loss. It should also here be pointed out that the premium on this policy had been paid through March 29, 1968 and the loss occurred on November 13, 1967.

There being no reversible error argued in brief, this case is affirmed.

Affirmed.

WRIGHT, P. J., and HOLMES, J., concur.